24-1137
*Teri Woods Publ'g, LLC v. Amazon.com, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of February, two thousand twenty-five.

PRESENT:
> RICHARD J. SULLIVAN,
> MICHAEL H. PARK,
> BETH ROBINSON,
> > *Circuit Judges.*

_____

TERI WOODS PUBLISHING, LLC,

> *Plaintiff-Appellant*,

v.  No. 24-1137

AMAZON.COM, INC., AUDIBLE, INC., BLACKSTONE AUDIO, INC., URBAN AUDIO BOOKS, LLC,

> *Defendants-Appellees.*

_____

| | |
|---|---|
| **For Plaintiff-Appellant:** | BRUCE R. EWING (Daniel P. Goldberger, *on the brief*), Dorsey & Whitney LLP, New York, NY. |
| **For Defendants-Appellees Amazon.com, Inc. and Audible, Inc.:** | JEDEDIAH WAKEFIELD, Fenwick & West LLP, San Francisco, CA (Brian D. Buckley, Deena J.G. Feit, Fenwick & West LLP, Seattle, WA, *on the brief*). |
| **For Defendant-Appellee Blackstone Audio, Inc.:** | Craig J. Mariam, Gordon Rees Scully Mansukhani, LLP, Los Angeles, CA. |
| **For Defendant-Appellee Urban Audio Books, LLC:** | Samuel P. Vitello, Akerman LLP, New York, NY; Eric J. Gribbin, Akerman LLP, Chicago, IL. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the April 2, 2024 judgment of the district court is **AFFIRMED**.

Plaintiff Teri Woods Publishing, LLC ("TWP") appeals from a judgment of the district court dismissing its copyright infringement and breach-of-contract claims against Defendants Amazon.com, Inc. ("Amazon"), Audible, Inc. ("Audible"), Blackstone Audio, Inc. ("Blackstone"), Urban Audio Books, LLC ("Urban Audio," and collectively, "Defendants"). On appeal, TWP contends that

the district court erred in concluding that the licensing agreement entered between TWP and Urban Audio unambiguously permitted Defendants to distribute audiobook versions of TWP's works through their online audiobook streaming subscription services. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I. Background**

In December 2018, TWP, a company owning or holding the exclusive license to copyrighted books authored by Teri Woods, entered into a licensing agreement (the "License Agreement") with Urban Audio, granting it the "exclusive unabridged audio publishing rights[] to manufacture, market, sell and distribute" audiobook versions of TWP's works listed in the agreement (the "TWP Works"). J. App'x at 38 (emphasis omitted). According to TWP, at some point after entering the License Agreement, Urban Audio granted its rights under that agreement to Blackstone, which in turn entered into a sublicensing arrangement with Amazon and its subsidiary, Audible. As TWP alleges, Defendants then distributed the TWP Works on their respective online subscription platforms, allowing members who paid monthly fees to digitally stream or download the TWP Works (among a wider selection of works) without making any specific

3

payment for the audiobooks being streamed or downloaded. TWP claims that, as a result of these audiobook-subscription-distribution models, the TWP Works were effectively distributed for "free" and in such a way that TWP received only a small fraction of the royalties that it should have received under the License Agreement.

In January 2023, TWP terminated the License Agreement and then brought this federal action, primarily alleging that Urban Audio breached the parties' contract and that all Defendants infringed on TWP's copyrights by distributing the TWP Works in a manner not authorized by the License Agreement. The district court granted Defendants' motions to dismiss TWP's direct and secondary copyright infringement claims, concluding in principal part that the License Agreement unambiguously granted Urban Audio – as well as Blackstone, Amazon, and Audible as sublicensees – the right to distribute the Licensed Works through their subscription streaming services. The district court then declined to exercise supplemental jurisdiction over TWP's state law breach-of-contract claims against Urban Audio and dismissed those claims as well. This appeal followed.

## II. Standard of Review

We review the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*, "accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 769 (2d Cir. 2016) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing a district court's dismissal on Rule 12(b)(6) grounds, we consider "the facts as asserted within the four corners of the complaint[,] together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks omitted).

"To state a claim for copyright infringement, a plaintiff must allege both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (internal quotation marks omitted).[1] A valid license to use the copyrighted work

---

[1] A defendant may be liable for contributory or vicarious – *i.e.*, secondary – infringement by "intentionally inducing or encouraging direct infringement" or "profiting from direct infringement while declining to exercise a right to stop or limit it." *Spinelli*, 903 F.3d at 197

5

"immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007). Thus, "[w]here only the scope of the license is at issue," as is the case here, the copyright owner bears the "burden to show that the defendant's use of a work was unauthorized." *Spinelli*, 903 F.3d at 197 (internal quotation marks omitted). Copyright infringement actions such as this one, "involving only the scope of the alleged infringer's license[,] present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the [relevant] activities." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).

Under New York law, which the parties agree applies in this case, the determination of whether a contract is ambiguous and the interpretation of an unambiguous contract are both questions of law, which we review *de novo*. *See Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1026 (2d Cir. 1991); *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005). A contract is unambiguous where its "language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and

---

(internal quotation marks omitted). "Without a showing of a direct copyright infringement, secondary liability cannot be maintained." *Id.*

6

concerning which there is no reasonable basis for a difference of opinion." *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (alteration accepted and internal quotation marks omitted). But as we have made clear, "ambiguity does not exist simply because the parties urge different interpretations." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001) (internal quotation marks omitted). Ultimately, "[i]n reviewing a written contract," the court's "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

**III. Discussion**

On appeal, TWP contends that the district court erred in dismissing its copyright infringement claims because the License Agreement is, at the very least, ambiguous as to whether Defendants' distribution of the TWP Works through their online subscription services exceeded the scope of TWP and Urban Audio's license. We disagree.

We begin, as the district court did, with section I of the License Agreement. That provision granted Urban Audio:

> the exclusive unabridged audio publishing rights[] to manufacture, market, sell and distribute copies throughout the World, and in all

7

> markets, copies of unabridged readings of the [TWP Works] on cassette, CD, MP3-CD, pre-loaded devices, as Internet downloads and on, and in, other contrivances, appliances, mediums and means (now known and hereafter developed) which are capable of emitting sounds derived from the recording of audiobooks.

J. App'x at 38 (emphasis omitted). As the district court concluded and TWP effectively concedes on appeal, digital streaming via Defendants' online platforms fell within section I's catch-all phrase "other contrivances, appliances, mediums and means . . . which are capable of emitting sounds." And TWP fails to meaningfully explain why distribution through subscription memberships was not covered by section I's broad grant to Urban Audio of the right to "manufacture, market, sell and distribute" audio versions of the TWP Works. Indeed, section I included no requirements as to how the TWP Works were to be marketed, sold, or distributed, nor did it contain any specifications limiting how Urban Audio was permitted to "distribute" them. In addition, under section XI(3)'s "Assignability" provision, Urban Audio unambiguously had the "right to assign" the License Agreement, and "to sublicense to . . . any other . . . firm," as it allegedly did with Blackstone, Amazon, and Audible. *Id.* at 40.

Faced with this broad grant of rights, TWP turns to other provisions of the License Agreement to contend that distribution via membership subscription

8

services exceeded the scope of the parties' agreement. It is of course true that courts "must look to all corners of the document rather than view sentences or clauses in isolation," *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989) (internal quotation marks omitted), and "must give effect and meaning to every term of a contract and strive to harmonize all of its terms," *Spinelli*, 903 F.3d at 200 (alterations adopted and internal quotation marks omitted). But even considering the License Agreement as a whole, we are not persuaded that Defendants' distribution via subscription membership services was impermissible.

TWP primarily urges us to find ambiguity as to the scope of the License Agreement by reading section I's grant of distribution rights together with section II's provisions regarding the payment of royalties. According to TWP, Defendants' distribution of the TWP Works to their subscribers "for free" both ran afoul of the License Agreement's payment provisions and conflicted with the parties' intent to generate revenues for TWP (and Urban Audio) from the distribution of the TWP Works. In a similar vein, TWP contends that the License Agreement only permitted the distribution of the TWP Works in a way that generated royalty payments on a "per-unit or per-copy basis." TWP Br. at 31, 42.

9

To begin, the complaint's allegations belie TWP's characterization of "free" distribution of the TWP Works. The complaint includes no allegation that Urban Audio licensed or distributed the TWP Works to Audible, Amazon, or Blackstone for free, and repeatedly alleges that Defendants in turn distributed the TWP Works to their subscribers in exchange for compensation in the form of membership fees. *See, e.g.*, J. App'x at 23–24 ("Audible Premium Plus members receive 1 credit a month to redeem for any audiobook on Audible . . . for $14.95/month." (internal quotation marks omitted)); *id.* at 25 ("Amazon and Audible advertised the TWP Works to Audible subscribers (*i.e.*, '$0.00' or 'free') while simultaneously collecting monthly membership fees[.]"); *id.* at 26 ("For both UAB's and Blackstone's [$12.99 per month] subscription services, each [monthly] 'Credit' can be redeemed for a digital download [of] an eligible audiobook. The TWP Works are redeemable with these Credits."). Moreover, nowhere does the complaint plausibly allege that Defendants distributed the TWP Works in such a way that entirely failed to generate royalties for TWP; instead, TWP claims that Defendants have "not been paying full royalties" on the digitally streamed TWP Works. *Id.* at 25; *see id.* at 27 (alleging TWP received a "fraction of pennies for each 'digital stream,'" instead of "contractually[]agreed royalties").

10

Moreover, section I contained no requirements as to *how* Urban Audio as licensee (or the remaining Defendants as assignees or sublicensees) could sell or distribute the TWP Works.  Nor do we find any such conditions or restrictions in the License Agreement's royalties provisions set out in section II.[2]  In particular, we agree with the district court that section II did not require that the TWP Works be distributed only in a manner that would generate royalties on a per-unit basis.  While section II specified per-"unit" royalty payments for "Playaway format sales" under certain conditions, *id.* at 39, it included no such conditions with respect to the royalty provisions for other sales and rentals or internet downloads, *see 10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 223 (2d Cir. 2021) ("[D]istinct terms must be given their own effect, and . . . the use of a term in one place but not the other is presumed to be intentional.").  Because the parties could have negotiated a per-unit royalty schedule for non-Playaway distributions had they wanted to, we will not read such a per-unit distribution limitation into the License Agreement.  *See Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap.*,

---

[2] Given the structure of section II(1), subsection (a) appears to operate as a catch-all provision for "sales and rentals," with subsections (b) and (c) specifying a higher percentage to be applied to the net receipts for the sales of the TWP Works on two specific mediums, "internet downloads" and "Playaway format sales."  J. App'x at 39.  The parties agree that Defendants' subscription plans were not covered by subsection (c) concerning "Playaway format sales."  *Id.*

11

*Inc.*, 821 F.3d 297, 307 (2d Cir. 2016) ("[W]e are not free to rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction." (internal quotation marks omitted)).

To the extent that the parties dispute which of the royalty provisions was triggered by Defendants' subscription-based distributions, and whether the payments remitted from Audible, Amazon, and Blackstone to Urban Audio and from Urban Audio to TWP were correct under the License Agreement, such disagreements arguably suggest ambiguity with respect to the *payment provisions*, but not with respect to the scope of the distribution rights under the license. In short, TWP's allegations amount to only a contractual dispute over what royalties TWP should have received for Defendants' distribution of the TWP Works, not a claim for copyright infringement. *See Spinelli*, 903 F.3d at 201–02, 202 n.7.

For these reasons, this case is distinguishable from the license agreements in *Spinelli*, where we held that the plaintiffs plausibly alleged a claim for copyright infringement. There, the plaintiff sports-photographers had entered into "contributor agreements" with the Associated Press ("AP"), granting AP a "broad license" with respect to their photographs of National Football League ("NFL") events, *id.* at 193–94; AP, in turn, sublicensed use of the plaintiffs' photographs to

12

the NFL on a "complimentary" basis, *id.* at 193, 195–96.  In concluding that the contributor agreements were ambiguous with respect to the grant of this sublicensing activity, we focused on the agreements' royalty provisions, which required payments based on "qualifying Event Photo Sales," defined to refer to, as relevant to this case, "the sale[s] of licenses for individual photos for which a per-image price is established."  *Id.* at 200 (internal quotation marks omitted).  As we reasoned, the defendants' interpretation – under which "AP could avoid all royalty obligations to [p]laintiffs so long as it d[id] not sell [their] photographs on a per-image basis" to any third party – not only rendered superfluous several exceptions to the contributor agreements' royalty requirements, *id.*, but also "seem[ed] manifestly at odds" with the purpose of the agreements, *i.e.*, to license photos "for the mutual benefit of both AP and the photographers," *id.* at 201.  Here, by contrast, the License Agreement did not provide for the payment of royalties on a per-unit basis; it merely provided that TWP was entitled to a percentage of "net receipts" received by Urban Audio for sales, rentals, and internet downloads.   And unlike AP's sublicense to the NFL, Defendants' alleged distribution activities here did not altogether deprive TWP of royalties on the TWP Works to which it would otherwise be entitled.

13

TWP's argument that Defendants exceeded the scope of the License Agreement by allowing their subscribers to listen to excerpts of the TWP Works without paying is equally unpersuasive. According to TWP, this distribution ran afoul of section I, which limited the grant of Urban Audio's rights to distribute "copies of *unabridged* readings of the [TWP Works]," J. App'x at 38 (emphasis added), and section V, which specified that "excerpts are not to exceed 7500 words" and may be used "solely in connection with the promotion and advertisement of the recorded work," *id.* at 39. But as the district court correctly observed, nowhere does TWP allege that "Defendants produced versions of the Licensed Works that were condensed or otherwise altered from the original in any way" – that is, "abridged." *Id.* at 158–59 (citing *Abridge*, *Abridgement*, Black's Law Dictionary (10th ed. 2009)). Instead, the complaint only alleges that Audible and Amazon failed to pay royalties on "listens to TWP Works lasting fewer than five minutes." *Id.* at 25. Such a claim – that TWP was owed royalties from Audible and Amazon when their subscribers listened to only a short portion of the TWP Works – does not sound in copyright infringement, but again only suggests a breach-of-contract claim.[3]

---

[3] TWP contends on appeal that Defendants "allowed listeners to access the TWP Works for less

\*   \*   \*

In sum, we agree with the district court that the License Agreement unambiguously allowed for Defendants' distribution of the TWP Works through their online subscription services, and thus TWP failed to allege any copyright infringement claims against Defendants.  And since the district court was justified in dismissing TWP's federal copyright claims, its decision not to exercise supplemental jurisdiction over TWP's state-law claims was also proper.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123–24 (2d Cir. 2006).

We have considered TWP's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court



---

than five minutes at no charge."  TWP Br. at 43; *see, e.g.,* Reply Br. at 25–26 (arguing that Defendants' "configure[d] their subscription plan[s] to enable subscribers to listen to the TWP Works without payment for less than five minutes").  To the extent that TWP asserts that customers could access excerpts of the TWP Works without having to pay, that argument does not mirror what is alleged in the complaint – that *Audible* and *Amazon* did not pay royalties when subscribers listened to less than five minutes of the TWP Works.

15